## HARTLEY *vs.* WATERHOUSE.—SAME *vs.* SAME.—WILSON *vs.* HARTLEY.

*Eleventh Judicial District Court, August,* 1854.

### MORTGAGE NOTES—PRIORITY OF PAYMENT.

If a mortgage is given to secure several notes, they are to be paid pro rata from the avails of the property. An assignment of the notes will not ensure the full payment of them as they mature, leaving the last to meet the deficiency.

Action brought to settle adverse claims to the proceeds of property sold under a mortgage by virtue of possession of different notes covered by the same mortgage. The facts are reported in the opinion.

————————, for plaintiff.

————————, for defendant.

HOWELL, J.—On the 10th day of August, 1853, C. C. Waterhouse being indebted to John Williams, to the use of Margaret Gish, in the sum of four thousand dollars, and to Jacob Gish, in the sum of two thousand dollars, executed to Williams, to the use aforesaid, two notes, one for two thousand dollars, payable on the 1st day of May, 1854, and the other, for a like amount, payable on the 1st day of August, 1854 ; and Jacob Gish two other notes, one for one thousand dollars,

payable on the 1st day of May, 1854, and the other, for a like sum, payable on the 1st day of August, 1854. On the same day, and to secure all of the above notes, he executed to Williams and Gish a mortgage on certain lands in Yolo county, which was duly acknowledged and recorded in the recorder's office.

On the 13th of April, 1854, as appears from the endorsment, Williams assigned to Wilson and Kirkpatrick the two thousand dollar note, falling due on the 1st of May, 1854 ; and subsequent to that time all of the other notes were assigned to H. H. Hartley. It is agreed that Wilson and Kirkpatrick paid the full amount called for by the note which they purchased, and that Hartley paid for the notes purchased by him, at the rate of thirty cents on the dollar.

On the 14th day of June, 1854, all of the interest that Gish then had in the mortgage was assigned to Hartley.

On one day, the same month, Wilson, Kirkpatrick and Hartley, instituted separate suits, in this court, to recover judgments on their notes then due, and for a foreclosure and sale of the mortgaged premises ; and since then, (in the month of August,) Hartley instituted suits, in the same court, to recover judgments on the other notes held by him, and also for a foreclosure and sale of the mortgaged premises.

It is agreed that each party is entitled to judgment for the debt and interest claimed.

It is also agreed that the mortgaged premises are insufficient to pay all of the notes and the interest accrued.

The parties disagree as to the manner in which the moneys to be derived from the sale of the mortgaged premises are to be applied. The attorney for Wilson and Kirkpatrick insists that inasmuch as they received the first assignment, they are entitled to have their note first paid. That if the Court should be of opinion that this position is untenable, then they are entitled to preference as against all of the other notes, except the one thousand dollar note held by Hartley, which fell due on the 1st of May, 1854. Hartley contends that the moneys are to be divided, pro rata, among all the notes. And the application is now made to the Court to settle these differences, and divide the money as in its judgment would be proper under the circumstances.

In support of the proposition that Wilson and Kirkpatrick, being the first assignees, have preference in the application of the proceeds

of the sale, the attorney cites Cullum et. al. vs. Erwin, Admr., 4 Alabama R., 452, and Van Rensellaer vs. Stafford et. al., 1 Hopkins, ch. R., 569.

In the case cited from 4 Alabama, a mortgage had been executed to Cullum to secure the payment of five promissory notes, falling due at different times. The first note had been paid to Cullum. The second note falling due had been assigned by Cullum to Harding. The two next, to the Bank of Mobile, and the remaining two to the Planters' and Merchants' Bank. The Court below decreed that the assignees of the notes were entitled to priority of payment in the order in which the *notes fell due,* and *that,* the Court declare, is the *principal* question to be determined. Neither party claimed preference by priority of assignment, and the question was not raised or decided by the Court. The Court say that, " when Cullum transferred the second note *falling due* to Harding, if there was no reservation of his interest in the mortgage, the assignment of the note was an assignment pro rata of the mortgage ; and if Cullum had retained the remaining notes, and the mortgaged property had proved insufficient for the payment of the entire mortgage debt, his assignee would have been entitled to priority ; and being entitled to priority against Cullum, he has the same right against his assignee, as he could convey no greater right than he himself had." Nor does the case cited from 1 Hopkins, 569, support the position contended for by the attorney for Wilson and Kirkpatrick. In that case, Van Rensellaer had sold a tract of land to Van Dusen, with the understanding that when the title passed, Van Dusen was to secure the purchase money by mortgage on the land conveyed. Before the time for making the deed elapsed, Van Dusen agreed with Joseph Wright and Isaac Powell to sell the same land to them ; and, therefore, at the solicitation of Van Dusen, Van Rensellaer agreed to make Van Dusen a deed, with the express understanding, and on the *condition* that Van Dusen, on conveying to Wright, should take a mortgage from Wright and wife, in the sum of $1180, and havs it registered *prior* to the mortgage of $670, (which Van Dusen was taking for his own security,) and to Van Rensellaer. The mortgages were taken as agreed upon, but were both registered at the same time. Van Dusen assigned the $1180 mortgage to Van Rensellaer, and afterwards assigned the one for $670 to Stafford and others.

The Court gives priority to Van Rensellaer, but not upon the ground that he was the first assignee. But upon the ground that Van Dusen received and held the $1180 mortgage in trust for Van Rensellaer, and that it was the intention, as appeared from the nature of the dealings between the parties, to make Van Rensellaer, by the assignment, the first incumbrancer. The Court say that, "Van Dusen could not by transfer divest or destroy the right which existed between him and Van Rensellaer; and that Stafford and others took the mortgage charged with all the equity which existed against it in the hands of their assignor." If this doctrine be true, and Stafford and others had procured their assignment first, it could have availed them nothing. They would still have been affected by Van Rensellaer's equities, and would have been postponed to him in the distribution of the funds arising from the sale of the mortgaged premises.

But if the authorities cited had fully sustained the position contended for by counsel, I am not prepared to endorse it, or the reasons upon which it is founded, particularly in this case. Here notes had been executed by Waterhouse to two different parties, between whom there was no unity of interest. The debts were several, each owning and claiming in his own right. Neither had a right to affect or control the other's interest. They were secured by the same mortgage, on the same property, and the notes of each fell due at the same time; and the only difference was that one had notes for $4000, and the other for $2000. They were each equally protected by the mortage, and it was evidently so intended by all parties to the transaction at the time the notes and the mortgage were executed. Suppose Waterhouse had executed two mortgages at the same time, one to secure Gish and the other to secure Williams, and they both had been registered at the same instant, would it be contended for an instant, that one mortgage could by assignment or otherwise defeat the rights of the other. If then each mortgagee in separate mortgages is protected, they are equally so where the mortgage is joint. This brings me to the consideration of the second proposition contended for by the attorney for Wilson and Kirkpatrick, viz. : "That the notes first falling due are entitled to preference." In support of this doctrine, 13 Ohio, 140; 8 Blackford, 446; and 4 Alabama, 452, are cited. These decisions hold to the doctrine that the note first due has preference.

The *pro rata* rule is equally as well suited by the cases cited and relied upon by the other party. See 2d Vol. U. S. Eq. Dig. Title Mortgage, Sec. 195 and, 6, and 599; 6 Smedes & Marshall, 139; 6 Howard's R., 320; 17 Sergt. & Rawle, 400; and 10 Smedes & Marshall's R., 531. I am not aware of any decisions in this State, in which the question has been determined, and the state of the authorities leaves it entirely open, to be determined upon general principles.

The principal reason relied upon in the decisions cited by Wilson and Kirkpatrick's attorney, is that inasmuch as the mortgagee, while he held the notes, had a right to foreclose and sell the mortgaged property so soon as the first note fell due, and exhaust all of the property (if necessary for that purpose) in the satisfaction of the note, that by its assignment he has invested his assignee with the same right, and this too, as against the assignees of the notes subsequently falling due. That the mortgagee may have done so is true. That he may have exercised his discretion by waiting until the second note became due, and applied the whole proceeds to its payment, is equally true; or he may have applied the funds *pro rata*. If an unexercised right in the mortgage is to have any influence in determining the controversy between these parties, it applies with as much force to one as to the other. There is nothing in any of the assignments evidencing an intention on the part of either mortgagee in this case, to give a preference to one note over another. If it exists, it is by operation of law, growing out of the fact that one note fell due sooner than another. There is no doubt of the fact, that the lien created by the mortgage, operates as an equal security to all the rates, subjected to be defeated, so far as the notes last falling due were concerned, by exhausting the property for the satisfaction of the first notes. That has not been done. All of the notes are now due; suits have been brought on all of them, and the reason urged in support of priority has ceased. It was a mere advantage, because one note was due and the other not. Because one party could enforce his rights and the other not. Now all parties stand upon an equal footing. They can go into Court at once. They occupy the same position as if all the notes had been made payable at the same time. If that had been so, no one would have questioned the right of each to his *pro rata* share of the proceeds of the sale. The argument is that each assignee has been substituted to the rights

of his assignor as they existed at the time of the asssignment. That is perhaps true, provided the right had been exercised before the other notes become due. But suppose all of the notes had been due when the assignments were made; could either have claimed priority? Surely not, because the only fact that gave priority, no longer existed; the right in one to foreclose and sell, which was denied to the other because of his note not being due. The equities of the parties are equal. The advantage had by the holders of the notes first becoming due, has been lost to them, by the removal of the disability under which the holder of the second notes labored. They all stand upon equal footing, and must all share the proceeds of the sale *pro rata*, and the attorneys for the different claimants will draw up their decrees in that manner, and the clerk will so enter them.